**LAW OFFICE OF DAVID CLARK**
**101 EAST NINTH AVE., SUITE 12-B**
**ANCHORAGE, AK  99501**
**Phone      (907) 272-7989**
**Fax          (907) 274-9829**
**Email      dclark@lawddc.com**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| JACK HIVELY and GALINA HIVELY | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. A-05-214 CI (TMB) |
| BBA AVIATION BENEFIT PLAN AND BBA AVIATION SHARED SERVICES, INC. | ) ) ) ) ) ) ) | **OPPOSITION TO DEFENDANT'S FIRST MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) ) | |

Plaintiffs, Jack and Galina Hively, by and through counsel, oppose the defendant's Motion for Summary Judgment, Count II. The plaintiffs are entitled to statutory penalties, $110.00 a day, because the defendants failed to comply with 29 U.S.C. §1024(b)(4). The defendants were required to furnish "[A]ny other instrument under which the plan is established or operated." The defendants did not furnish the information requested despite many requests. Mr. and Mrs. Hively filed over 100 appeals with the defendant; most were simply ignored after they were filed. In conjunction with the appeals, after a denial of the reimbursement the Hivelys would often ask for specific information. For instance when appeals were denied because the Hivelys did not attend to a "network provider" the Hivelys

Summary Judgment Opposition
Hively v. BBB Health Trust
Case No. 3AN-05-214 CI
Page 1 of 13

assumed that the contract between UHC[1] and BBA allowed UHC to designate "network providers" and asked for the contract. See amended discovery answers attached. The Hivelys were quite specific in their request for information. The person requesting the information is not required to use technical precise language when requesting appropriate plan documents. The administrator cannot use technical considerations as an excuse for its failure to respond. *Anderson v. Flexol* 47 F.3d 243, 250 (7th Cir. 1995). In this case the Hivelys asked for:

1. What was the CTP Code or Codes used by UHC in establishing its reimbursement amount?

2. Specifically, how did UHC determine the amount it allowed?

3. If a database firm was used, what was the name of the company & its relationship with UHC?

4. Did UHC "downcode" the CTP Code submitted by the health service provider?

5. Was Alaska the only area used to determine the amount UHC allowed?

6. Requests for information regarding network providers?[2]

7. Requests for Information regarding Usual and Customary Charges.

8. Requests for the Contract between UHC and the BBA Aviation Benefit Plan

9. Copy of Fee Schedule referenced in the Plan (page 50 Hively 511 of the plan booklet)

The sole question presented by this appeal is did the Hivelys request information which would invoke the penalty imposed by 29 U.S.C. §1024(b)(4) from the BBA Benefit Plan administrator? The answer is yes. It is absolutely clear that one need not

---

[1] UHC is United Health Care the claims payer.
[2] Items 6, 7, 8 & 9 were recently supplemented in the plaintiff's discovery. The documentation had been previously provided to the defendants and is attached hereto.

ask for a specific document to have adequately made demand for the documentation. Although the "clear notice" test has been generally adopted, many courts have also limited its application and potential abuse by defendants and have suggested that "[A] request for information under § 1024 "need not ask for specific documents by name, and an administrator cannot use such technical considerations as an excuse for its failure to respond." See H*ess v. Hartford Life and Accident Ins. Co*., 91 F. Supp. 2d 1215, 1224 (C.D. Ill. 2000), aff'd, 274 F.3d 456 (7th Cir. 2001); *Fisher v. Metropolitan Life Insurance Co*., 895 F.2d 1073, 1077 (5th Cir. 1990) ("Nothing in either the request or the response indicates that [defendant] knew or should have known that [plaintiff] had requested a copy of any document relating to the . . . plan."); *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1071 (6th Cir. 1994) (finding that a requirement that a beneficiary must ask for a document by name rather than description is contrary to the spirit of § 1024(b)(4)); Boone v. Leavenworth Anesthesia, Inc., 20 F.3d 1108, 1111 (10th Cir. 1994) (holding that the court must view a request in its entirety and consider defendant's understanding of it)." *Kollman v. Hewitt Assocs. LLC*, 2005 U.S. Dist. LEXIS 24629, 18-21 (D. Pa. 2005)

The defendant was required to provide a written plan to the plaintiffs so that on "[E]xamining the plan documents, determine exactly what his rights and obligations are under the plan." H. R. Rep. No. 93-1280, p. 297 (1974)  ERISA gives effect to this "written plan documents" scheme through a comprehensive set of "reporting and disclosure" requirements, see 29 U.S.C. §§ 1021-1031, of which § 402(b)(3) is not part." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (U.S. 1995).  The plan administrators, upon written request are obligated to furnish beneficiaries with copies of governing plan documents.  See *Curtiss-Wright Corp* at 84.

The crucial tests then are to determine what are the governing plan documents and how specific does the request have to be. Plaintiffs received a copy of the BBA Aviation Benefit Plan which included a Summary Benefit Plan Description (BBA plan documents). The BBA plan documents the Hivelys received did not reference in any fashion Network health providers or Network Physicians and did not reference the terms used repeatedly by BBA "usual, customary & reasonable" to deny or significantly reduce benefits. The Hivelys were routinely denied full coverage for their health care reimbursement because they did not attend a physician who was an approved network provider. (See sample of denial letter attached as Hively 0016[3].) Jack Hively told BBA that they had no plan document which allowed UHC, the claims payer, to reduce benefits by the "usual, customary & reasonable charges, 80th percentile evaluations, deductions for failure to use network providers in Alaska…." See Hively 0095-0097, 0038, 0052-0053[4]  Jack Hively went on to say "I am entitled under ERISA to have a copy of all Plan documents, including insurance contracts, Dept of labor filings, etc.  In the context used Jack Hively was requesting information regarding Network physicians and the basis used to change the rate. See Hively 0096. Mr. Hively believed that the document that contained the information he was after was contained in the "Agreement" or "Contract" between UHC and BBA regarding UHC's obligations to pay claims. Mr. Hively's belief was reasonable given that UHC was providing information which appeared to come from some modified plan document, because UHC was not following the BBA Plan document when paying claims. Mr. Hively pointed out that UHC was not following the plan document and requested a copy of the Agreement from BBA

---

[3] All Hively documents are attached to the affidavit of Jack Hively
[4] Mr. Hively points out that networks, 80th percentile and professional & technical components and considers the response obfuscation. Mr. Hively requests records which clearly encompass the concerns he raised. These documents certainly are plan documents.

Summary Judgment Opposition
Hively v. BBB Health Trust
Case No. 3AN-05-214 CI
Page 4 of 13

believing that the Agreement might shed some light on UHC's statements regarding "usual, customary & reasonable" charges and the network health providers referenced in UHC's denials of coverage.[5]  See Hively at 0018-0019, 0083, 0096-00100, 054-056, 103-105, 397. After the defendant told Mr. Hively he could not have the "Agreement", Mr. Hively said "My interest is indeed in any "method UHC uses to arrive at benefit payable."  See Hively 0083. Mr. Hively points out that in the Benefit Summary for Anchorage-Non-Union see Hively 0066-0069, no mention is made of network physicians and no mention is made of paying the 80th percentile and then only paying 80% of that charge.  Although Mr. Hively may not have come out and said specifically give me the list of network physicians and the list of reasonable charges there is no doubt that is what he was asking for.  See Hively Affidavit When Mr. Hively thought the BBA-UHC agreement might shed some light on the plan, he told Janie Wallace at BBA (the plan administrator) exactly what he was looking for.  See Hively 0083.  He did not get it.

  The Hivelys asked for the list of network preferred providers yet were never furnished any information about who those providers were and how one would determine who they were.  The Hivelys reimbursements were denied based on assertions that the charges by the physicians exceeded the standard in the community.  Yet when the Hivelys asked how one would determine what the standards were, they were given no written information.  In documents numbered Hively 052-053, 103-104, 0111, 116-117 and 397 the Hivelys requested the basis for determining usual, customary and reasonable.  In document numbered BBA 00371, the defendant admitted that it was paying only the 80th percentile of 80% of the medical providers' bill which would be less than the 80% which the BBA Plan covered.

---

[5] The document may, BBA has not produced the document, and it simply claims that it is not applicable.

Since no known plan document allows the defendant to make this 80th percentile adjustment to the amount paid, plaintiff was entitled to ask for the document and receive it. The difference in the application for a $100 bill is approximately one-fifth more is paid by the plan beneficiary. See BBA 000371. This is a significant amount. Without knowledge of how the plan operated and applied the usual, customary and reasonable charges, obtaining a physician under the BBA plan was much like a game of Russian Roulette with consequences that could be financially devastating for the plan beneficiary if he or she chose a health provider who the BBA administrator determined charged rates which exceeded the usual, customary & reasonable charges in the market. See Hively document 0020-0025 and 0121. (The 80 percentile application appears to be applied to almost every bill willy-nilly. For instance UHC denied $72.00 of a Dr. Fischer's bill even though Dr. Fischer charged in the $50^{th} - 60^{th}$ percentile in Anchorage. See Hively document number 00455 and 00456.) Since the application of the 80th percentile to the health providers' charges seems almost universal, the Hivelys were entitled to the plan document that allowed such application.

      The plaintiffs also requested from the defendant the applicable fee schedule for network providers. The BBA Plan booklet, page 51, Hivley document no. 0511 defines "Reasonable Charge" as "charges for services rendered by or on behalf of a Network Physician, an amount not to exceed…the applicable fee schedule." Plaintiffs can only assume that a fee schedule exists since the Hivelys medical reimbursements were denied because a Network Physician was not used.[6]

      Plaintiffs also asked Defendant in approximately 70 documents (see document numbers Hively 0234 through 0236 as representative documents) a very specific question on

---

[6] Either there was a fee schedule used by UHC, or BBA was engaged in fiduciary fraud.

Summary Judgment Opposition
Hively v. BBB Health Trust
Case No. 3AN-05-214 CI
Page 6 of 13

how the plan operated: "Was Alaska the only area used to determine the amount UHC allowed?" UHC, in a letter dated 22 September 2003 (see document numbers Hively 0054, 0055 and 0056) stated the "reasonable and customary" evaluation was made for the 995xx zip code area (a "geozip" as defined in the letter." However, during discovery, it was found that UHC used broader areas. See BBA 00367 and 00368. In response to this Defendant changed the "… "Reasonable and Customary" Rate Percentile from the 80th percentile to the 95th percentile. (See BBA 00369 and 00371). Defendant admitted its evaluation of reimbursable rates to be faulty. However, Defendant did not reimburse Hivelys accordingly and retroactively.

The Ninth Circuit in *Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1202 (9th Cir. 2003) Stated that the term "instruments" as used in 29 USC 1024(b)(2) means "documents that provide individual participants with information about the plan and benefits." (cites omitted). It is imperative for a plan beneficiary to know which medical providers are part of the network and how the plan determines the "customary, usual and reasonable charges". If there are no documents that detail how customary and usual is applied then the standard cannot be a plan feature.[7] "The terms of ERISA plans sometimes "must be inferred from a series of documents none clearly labeled as 'the plan.'" *Health Care Controls, 187 F.3d at 712* (referring to *Milwaukee Area Joint Apprenticeship Training Comm., 67 F.3d at 1338; Horn, 938 F.2d 125).* Courts must look to surrounding evidence to establish the plan. See *Health Cost Controls, 187 F.3d at 712."* Hackett v. Xerox Corp. Long-Term Disability Income Plan, 2001 U.S. Dist. LEXIS 21305 (D. Ill. 2001). Reversed on other grounds Hackett v. Xerox Corp., 315 F.3d 771, 777 (7th Cir. 2003)  Network physicians and

---

[7] The BBA Plan documents do not refer to customary & usual but use the word "reasonable" when describing the medical services it will reimburse. See plan document at page 51

the application of the 80th percentile appear to be concepts based on documents not seen in any plan document that Mr. Hively had.  It is important to look at the documents the plan provider is obligated by statute or rule to have

The defendant relies on *DeBartolo v. Blue Cross/Blue Shield*, 2001 U.S. Dist. LEXIS 18363, 20-21 (D. Ill. 2001) to buttress its arguments.  However *DeBartolo* involved a physician who had taken an assignment of benefits from a patient and was trying to determine [W]hether or why the Walgreens Plan is discriminating between network providers and non-network providers; a purpose having little, if anything, to do with a plan participant's rights under the plan." *DeBartolo* at pg. 21.  *Debartolo* was not requesting the information to determine rights and duties of a plan beneficiary.  To understand what is required under a plan one must review the implementing regulations of 29 USC 1001 et seq.  For instance, federal regulations are quite specific on what a summary plan description contains.   29 CFR § 2520.102-3(j)  *Contents of summary plan description* provides as follows:

> 3) For employee welfare benefit plans that are group health plans, as defined in section 733(a)(1) of the Act, the summary plan description shall include a description of: any cost-sharing provisions, including premiums, deductibles, coinsurance, and co-payment amounts for which the participant or beneficiary will be responsible; any annual or lifetime caps or other limits on benefits under the plan; the extent to which preventive services are covered under the plan; whether, and under what circumstances, existing and new drugs are covered under the plan; **whether, and under what circumstances, coverage is provided for medical tests, devices and procedures**; **provisions governing the use of network providers, the composition of the provider network, and whether, and under what circumstances, coverage is provided for out-of-network services**; **any conditions or limits on the selection of primary care providers or providers of speciality medical care; any conditions or limits applicable to obtaining emergency medical care**; and any provisions requiring preauthorizations or utilization review as a condition to obtaining a benefit or service under the plan. **In the case of plans with provider networks, the listing of providers may be furnished as a separate document that accompanies the plan's SPD,**

>**provided that the summary plan description contains a general description of the provider network and provided further that the SPD contains a statement that provider lists are furnished automatically, without charge, as a separate document**. (emphasis added)
>
>…..
>
>(l) For both pension and welfare benefit plans, **a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery (e.g., by exercise of subrogation or reimbursement rights) of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits required by paragraphs (j)** and (k) of this section. In addition to other required information, plans must include a summary of any plan provisions governing the authority of the plan sponsors or others to terminate the plan or amend or eliminate benefits under the plan and the circumstances, if any, under which the plan may be terminated or benefits may be amended or eliminated; a summary of any plan provisions governing the benefits, rights and obligations of participants and beneficiaries under the plan on termination of the plan or amendment or elimination of benefits under the plan, ….

In addition Alaska Law, *3 AAC 26.110* requires health insurers, such as the BBA benefit plan, which do not fully compensate the beneficiaries for the actual amount billed to:

>a) A person that provides coverage in this state for health care services or supplies on an expense incurred basis for which benefits are based on an amount that is less than the actual amount billed for the health care services or supplies shall
>(1) **maintain or use a statistically credible profile of covered health care services and supplies on which to base payment**; the profile must
>(A) be updated at least every six months;
>(B) contain billed charges for services performed not more than one year before the date of the most recent profile; and
>(C) contain billed charges for each geographical area in which a claimant might receive treatment or, if statistically credible data for a particular service or supply item in a certain geographical area is unavailable, contain a sufficient number of billed charges for that service or supply item from another geographical area so that a reliable basis is established;
>(2) **determine the final payment for a covered service or supply based on an amount that**

Summary Judgment Opposition  
Hively v. BBB Health Trust  
Case No. 3AN-05-214 CI  
Page 9 of 13

> (A) reflects the general cost differences between the geographical area where the service was performed and the other geographical areas used in establishing the statistically credible profile under (1) of this subsection; the adjustment may be based on the Consumer Price Index, the medical care component of the Consumer Price Index, or another reasonable basis stated in writing; and
> (B) is equal to or greater than the 80th percentile of charges under (1) of this subsection for the health care services or supplies;
> (3) **provide with any claim payment an explanation of the basis of payments in clear and simple terms, including explanation of any adjustments made under (2)(A) of this subsection, and document the explanation provided in the claim file;** and
> (4) **provide an explanation in the health insurance policy of the basis of payments, including any payments for which a covered individual may be responsible and include on any schedule or summary of benefits page accompanying the policy**
> (A) the percentile used to determine final payment under (2)(B) of this subsection; and
> (B) a statement regarding whether the covered individual is responsible for any amount billed for a health care service or supply item that exceeds the amount of final payment.

In <u>*Bartling v. Fruehauf Corp.*</u>, 29 F.3d 1062, 1070 (6th Cir. 1994), the Sixth Circuit held the documents required to be provided under §1024(b)(4) include those that are required under the plan, reasoning that since they are required they are indispensable to the operation of the plan. In this case, the documents that the Hivleys requested are required under the plan. The defendants were required under federal law to provide the "**provisions governing the use of network providers, the composition of the provider network, and whether, and under what circumstances, coverage is provided for out-of-network services**; **any conditions or limits on the selection of primary care providers or providers of speciality medical care; any conditions or limits applicable to obtaining emergency medical care.**" in the summary plan benefit book. No provider Networks were identified under the plan although the Hively wrote on numerous occasions pointing this out. The only

information provided under the plan benefit book was that the plan would pay charges which were "reasonable." Although the Hivelys were denied benefits based on the fact the medical provider was out of network, no information was provided in any plan book which discussed network physicians. Since the information is required to be provided by law, the defendant was obligated to provide that information to the Hivelys when requested under 29 USC §1024(b)(4).

The Hivelys also requested information regarding what was "usual, customary and reasonable" as the defendant denied benefits to the Hivelys on that basis. Federal regulations require the defendant to provide the following: "**a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery (e.g., by exercise of subrogation or reimbursement rights) of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits required by paragraphs (j)"** No such statement is found in the plan documents provided to the Hivelys which states that benefits will be reduced based on a geographic custom and the usual set of criteria. The 80th percentile reduction to the "customary, usual and reasonable' medical charges was not disclosed to the Hivelys as well. Had it been the Hivelys could have made some informed choices.

Alaska law requires a person or entity which provides health care coverage which does not pay the full amount of the medical services to provide, at minimum, the basis for its determination of payment, and (1) **maintain or use a statistically credible profile of covered health care services and supplies on which to base payment**; the profile must (A) be updated at least every six months; (B) contain billed charges for services performed not

more than one year before the date of the most recent profile; and (C) contain billed charges for each geographical area in which a claimant might receive treatment or, if statistically credible data for a particular service or supply item in a certain geographical area is unavailable, contain a sufficient number of billed charges for that service or supply item from another geographical area so that a reliable basis is established; [8]

It is almost universal in application that the term "other instruments" in §1024(b)(4) is meant to refer to documents that provide or contain information concerning the terms and conditions of the participant's policy and how the plan is operated. *Allinder v. Inter-City Prods. Corp. (USA)*, 152 F.3d 544, 549 (6th Cir. 1998) *Hickey v. Pennywitt*, 2004 U.S. Dist. LEXIS 10734 (D. Ohio 2004). Since summary plans are required to provide information regarding network providers and the summary plan did not, the Hivelys request should have been honored. Since the usual, customary and reasonable charges were applied using a secret network physician fee schedule and a secret 80 percentile application to 80% of the medical bill, this is information which concerns the terms and conditions of the participants plan.

The plaintiffs clearly asked for documentation which supported the denial of benefits based on "network providers," "network physicians" and what constituted "reasonable, customary & usual" charges. Plaintiffs are entitled to the statutory penalties of $110.00 a day. The BBA Health plan was told that UHC had been sued in a number of jurisdictions for doing what was done here, see Hively 00125-00128. BBA ignored the Hivelys' appeals, ignored their request for information, and admitted in document number BBA 371 that the application of the 80th percentile would result in the plan beneficiaries

---

[8] 3 AAC 26.110

Summary Judgment Opposition
Hively v. BBB Health Trust
Case No. 3AN-05-214 CI
Page 12 of 13

receiving less than 80% of the medical charges, yet did not retroactively apply the new percentage. See Request for Admission attached.

Plaintiffs are entitled to a trial on the issue of statutory penalty to determine when they accrue, how much should be assessed and for what requests made by the Hivelys the penalty should apply to..

DATED this 23 day of October, 2006.

> LAW OFFICE OF DAVID D. CLARK
> Attorneys for Plaintiff
>
> By: s/ David Clark
> David Clark
> 101 E. 9th Ave., Suite 12-B
> Anchorage, AK 99501
> Phone:    (907) 272-7989
> Fax:       (907) 274-9829
> E-Mail    dclark@lawddc.com
> AK Bar No. 8310110

I HEREBY CERTIFY that on October 23rd , 2006
a copy of the foregoing was served electronically on :

David A. Devine
Groh Eggers, LLC

s/ David Clark